# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

IN THE MATTER OF AN APPLICATION OF APPLICATION OF
THE UNITED STATES OF AMERICA FOR A WARRANT TO
OBTAIN LOCATION INFORMATION, INCLUDING PRECISION
LOCATION INFORMATION; SUBSCRIBER AND
TRANSACTIONAL RECORDS; CELL SITE INFORMATION; AND
FOR A PEN REGISTER AND TRAP AND TRACE DEVICES FOR
THE CELLULAR TELEPHONE ASSOCIATED WITH IPV6
ADDRESS: IP Address: 2600:100a:b11a:f706:d1a6:fcd4:9e59:de40
Time: 2022-02-09 05:15:01 UTC

)
)
)
)
)

**FILED UNDER SEAL**

4:22 MJ 6051 PLC

SIGNED AND SUBMITTED TO THE COURT
FOR FILING BY RELIABLE ELECTRONIC
MEANS

## APPLICATION FOR A SEARCH WARRANT

I, ___Kelsey Snyder___, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the _____ District of ___New Jersey___, there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

         evidence of a crime;
         contraband, fruits of crime, or other items illegally possessed;
         property designed for use, intended for use, or used in committing a crime;
XX     a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | | Offense Description |
|---|---|---|
| *Title* | *Section* | |
| 18 | 2250(a) & 3583 | Failure to register as a sex offender and supervised release violation |

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

    ✓    Continued on the attached sheet.
    ❑    Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct

*Kelsey J Snyder*
*Applicant's signature*

Kelsey Snyder, DUSM, USMS
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: ___February 18, 2022___

*Patricia L. Cohen*
*Judge's signature*

City and State: ___St. Louis, Missouri___

Honorable Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*
AUSA: CARRIE COSTANTIN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO OBTAIN LOCATION INFORMATION, INCLUDING PRECISION LOCATION INFORMATION; SUBSCRIBER AND TRANSACTIONAL RECORDS; CELL SITE INFORMATION; AND FOR A PEN REGISTER AND TRAP AND TRACE DEVICES FOR THE CELLULAR TELEPHONE ASSOCIATED WITH IPV6 ADDRESS: IP Address: 2600:100a:b11a:f706:d1a6:fcd4:9e59:de40 Time: 2022-02-09 05:15:01 UTC | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 4:22 MJ 6051 PLC  **FILED UNDER SEAL**  SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

## APPLICATION BY ATTORNEY FOR THE UNITED STATES

COMES NOW the United States of America, by and through its attorneys, the United States Attorney for the Eastern District of Missouri, and Carrie Costantin, Assistant United States Attorney for said District, and hereby makes application to this Court for a warrant and order, pursuant to Title 18, United States Code, Sections 2703(c)(1)(A) & B, (c)(2), 3123 and Federal Rule of Criminal Procedure 41, authorizing agents/officers of the United States Marshals Service (USMS) (hereinafter referred to as the "investigative agency(ies)"), and other authorized federal/state/local law enforcement agencies, to obtain records and location information, including precision location information, cell site location information, and other signaling information, associated with the cellular telephone using **IPV6 Number IP Address: 2600:100a:b11a:f706:d1a6:fcd4:9e59:de40 Time: 2022-02-09 05:15:01 UTC**, identified in Attachment A to the requested Warrant and Order (hereinafter the "subject cellular telephone").

## INTRODUCTION AND RELIEF REQUESTED

1.      The present application requests relief in three forms.   First, the application requests the disclosure of information about the location of the subject cellular telephone described in Attachment A to the requested Warrant and Order, including GPS or E-911 information. Second, the application requests transactional and subscriber records and cell site information, which does not include precision location information, associated with the subject cellular telephone.    Third, the application requests authorization for the installation and use of pen register and trap and trace devices.   In making this application, the United States does not seek the contents of any communication.

2.      The subject cellular telephone is serviced by Verizon (hereinafter referred to as "the Provider").   The records and information requested herein may include information related to when the subject cellular telephone is located in a protected space, such as a residence.

3.      The Provider is an electronic communications service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A).

4.      Based on the facts as set forth in the attached affidavit, there is probable cause to believe that the subject cellular telephone is currently being used by Deandra ADAMS (the subject person) for whom an arrest warrant was issued by the U.S. District Court for the Eastern District of Missouri on or about January 10, 2022, in Cause No. 4:09 CR 128 ERW for a supervised release violation based on a Petition for a Warrant from the United States Probation Office for Deandra ADAMS who is on supervision for Failure to Register as a Sex Offender in violation of Title 18, United States Code, Section 2250.

2

5.     The USMS AND/OR OTHER LAW ENFORCEMENT AGENCY has probable cause to believe that the subject cellular telephone is currently being used by Deandra ADAMS for whom an arrest warrant was issued by the U.S. District Court for the Eastern District of Missouri on or about January 10, 2022, in Cause No. 4:09 CR 128 ERW for a supervised release violation based on a Petition for a Warrant from the United States Probation Office for Deandra ADAMS who is on supervision for Failure to Register as a Sex Offender in violation of Title 18, United States Code, Section 2250, and whose whereabouts are currently unknown. The United States makes this application upon a showing of probable cause.   Incorporated by reference as if fully set out herein is the affidavit of Deputy United States Marshal Kelsey Snyder which alleges facts in order to show that there is probable cause to believe that the location of the subject person can be obtained by locating and monitoring the location of the subject cellular telephone, without geographic limitation within the United States, including by obtaining precision location information (*e.g.*, GPS and E-911 information), subscriber and transactional data, cell site information, and signaling information from pen register and trap and trace devices concerning the subject cellular telephone, as described in Attachment B to the requested Warrant and Order.

6.     The applicant and undersigned Assistant United States Attorney is an "attorney for the United States" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

## JURISDICTION

7.     This Court has jurisdiction to issue the requested Warrant and Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.   18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).   Specifically, the Court is "a district court of the United States . . .  that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PRECISION LOCATION INFORMATION REQUEST**

8.      The United States requests a warrant directing the Provider, and/or any service provider(s) reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide all information about the location of the subject cellular telephone, as described in Part I of Attachment B to the requested Warrant and Order, during all times of day and night.

9.      "Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the subject cellular telephone described in Attachment A to the requested Warrant and Order.

**TRANSACTION RECORDS AND CELL SITE LOCATION
INFORMATION REQUEST**

10.      The United States further requests a warrant directing the Provider, and/or any service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to provide certain telecommunication records and information, including transactional and subscriber data and cell site location information, but not the contents of any communication, as described in Part II of Attachment B to the requested Warrant and Order.

11.      A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents

4

of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the Affidavit attached to this application and incorporated herein, sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment B to the requested Warrant and Order are relevant and material to an ongoing criminal investigation.

## PEN REGISTER, TRAP AND TRACE REQUEST

12. This is an application made, in part, under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of pen register and trap and trace devices on the Provider and any other applicable service providers reflected in Attachment A to the requested Warrant and Order.

13. Such an application must include three elements: (1) "the identity of the attorney for the United States or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b). These elements have been established previously in this Application.

14. A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the

originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

15.    In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.   Similar principles apply to other kinds of wire and electronic communications, as described below.

16.    A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications.   Individuals using cell phones contract with cellular service providers, who maintain antenna towers covering specific geographic areas.   In order to transmit or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

17.    In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it.   Depending upon the cellular network and the device, the embedded unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").   When a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.   The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call.   They can be recorded by pen-trap devices and

indicate the identity of the cell phone device making the communication without revealing the communication's content.   In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data).   These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

18.   A cell phone can also be used to exchange text messages with email accounts.   The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents. Cellular phones can connect to the Internet via the cellular network.   When connecting through the cellular network, Internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.   Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication.   Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.   These telephone numbers can include "post-cut-through dialed digits," which are numbers dialed from the cell phone after the initial call set up is completed. For example, some post-cut-through dialed digits may be the actual telephone number called, such as when a subject places a calling card, credit card, or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party.   That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made.   In the event that

the pen-trap devices capture some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the United States' use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

19.     As previously outlined, the United States certifies that the information likely to be obtained through the aforesaid pen register and trap and trace devices, including enhanced caller identification, is relevant to an ongoing criminal investigation.

20.     For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices as defined in Title 18, United States Code, Section 3127, without geographic limitation within the United States, to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the subject cellular telephone described in Attachment A, to include the date, time, and duration of the communication, as described in Part III of Attachment B.  The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

21.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order the Provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with a minimum of disruption to normal service.

22.     The United States further requests that the Court order the Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the investigative agency(ies) of any changes relating to the cell phone number described in Attachment A to the requested Warrant and Order, and to provide prior notice to the applicant and the investigative agency(ies) before terminating or changing service to the phone number.

23.     The United States further requests that the Court order that the investigative agency(ies) and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, and at reasonable intervals and at such other times as may be acceptable to them, for the duration of the Warrant and Order.

24.     The United States further requests that the Court order that should the telephone and/or ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI number listed in Attachment A to the requested Warrant and Order be changed by the subscriber during the effective period of any Order granted as a result of this application, that the Court order the request for pen register and trap and trace devices remain in effect for any new telephone to which the subject cellular telephone listed above is changed, throughout the effective period of such Order.

25.     The United States further requests that the Provider and/or any entity providing such assistance shall be reasonably compensated by the investigative agency(ies) pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

## **MISCELLANEOUS CONSIDERATIONS**

26.     Pursuant to Title 18, United States Code, Section 2703(c)(3), the United States entity or agency receiving these records or information as a result of this application and

accompanying warrant and order will not provide notice to the subscriber or customer of the subject cellular telephone.

27.     Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703.   The information requested herein does not require a physical intrusion or physical trespass into any protected space.  Accordingly, it is respectfully requested that the warrant authorize the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain the information described herein at any time, day or night.

28.     The United States further requests that the Order direct that the investigative agency(ies) provide the telecommunication providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

29.     Based on the forgoing, I request that the Court issue the requested search warrant. The United States will execute this warrant by serving the warrant on telecommunication providers reflected in Attachment A to the requested Warrant and Order.   Because the warrant will be served on telecommunication providers reflected in Attachment A to the requested Warrant and Order, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30.     In light of the ongoing nature of the investigation as reflected in the attached affidavit, and because disclosure at this time would seriously jeopardize the investigation,

including by giving the subject(s) an opportunity to destroy and/or tamper with evidence and flee, applicant requests that the application, affidavit and warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit, which is attached hereto and incorporated herein, the applicant requests that this Court issue a Warrant authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the subject cellular telephone.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Dated this    18th    day of February, 2022.

Respectfully submitted,
SAYLER A. FLEMING
United States Attorney

*Carrie Costantin*
Carrie Costantin #35925 MO
Assistant United States Attorney

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION ) | |
| OF THE UNITED STATES OF AMERICA ) | |
| FOR A WARRANT TO OBTAIN ) | |
| LOCATION INFORMATION, INCLUDING ) | No.   4:22 MJ 6051 PLC |
| PRECISION LOCATION INFORMATION; ) | |
| SUBSCRIBER AND TRANSACTIONAL ) | |
| RECORDS; CELL SITE INFORMATION; ) | **FILED UNDER SEAL** |
| AND FOR A PEN REGISTER AND TRAP ) | |
| AND TRACE DEVICES FOR THE CELLULAR ) | |
| TELEPHONE ASSOCIATED WITH ) | |
| IPV6 ADDRESSS: IP Address: ) | |
| 2600:100a:b11a:f706:d1a6:fcd4:9e59:de40 ) | |
| Time: 2022-02-09 05:15:01 UTC ) | |

**AFFIDAVIT**

I, Kelsey Snyder, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I make this affidavit in support of an application for a warrant and order pursuant
to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated
with a cellular telephone   IPV6 Number IP Address: 2600:100a:b11a:f706:d1a6:fcd4:9e59:de40
Time: 2022-02-09 05:15:01 UTC (hereinafter referred to as the "subject cellular telephone") to
require Verizon (hereinafter "the Provider"), and/or any service providers reflected in Attachment
A, to include providers of any type of wire and/or electronic communications, and any other
applicable service providers, to disclose to the United States location information, including
precision location information, transactional and subscriber data and cell site location information,
and the installation and use of other pen register and trap and trace devices associated with the
subject cellular telephone**,** as described in Attachment B to the requested warrant and order.

2.       I am a Deputy U.S. Marshal with the United States Marshals Service and have been
employed as such for over six years.  I have received training concerning the apprehension of

fugitives using tracking of cellular telephones and internet use.   My duties and assignments require me to investigate, locate and apprehend state and federal fugitives.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.   This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the subject cellular telephone.

5.      Based on my training and experience and the facts as set forth in this affidavit, the USMS has probable cause to believe that the subject cellular telephone is currently being used by Deandra ADAMS for whom an arrest warrant was issued by the U.S. District Court for the Eastern District of Missouri on or about January 10, 2022, in Cause No. 4:09 CR 128 ERW for a supervised release violation based on a Petition for a Warrant from the United States Probation Office for Deandra ADAMS who is on supervision for Failure to Register as a Sex Offender in violation of Title 18, United States Code, Section 2250, and whose whereabouts are currently unknown.

**<u>BACKGROUND CONCERNING WIRELESS PROVIDERS</u>**

6.      Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system.

Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.   Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

c.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

d.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.   A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.   Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").   When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.   Wireless providers also maintain business records and subscriber information for particular accounts.   This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.   In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).   The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

f.   Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.   This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data.   In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data.   E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the

4

provider's cell towers.   Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

g.     The pen register/trap and trace order referenced in paragraph G above required the Service Provider to provide agents with the Internet Protocol addresses from which the subject cellular telephone account is accessed.

h.     In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States.   The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

i.     Electronic communication devices such as cellular phones are capable of connecting calls between cellular phones and land lines, as well as enabling users to connect to the internet.   Each electronic communication devices that utilize cellular or internet services are serviced by a specific internet service provider.   Electronic devices connect to the internet using internet protocol (IP) addresses assigned by the ISP, which may connect via dedicated physical connections, or across the wireless/cellular networks (e.g. Long-Term Evolution ("LTE").   There are two types of IP addresses that may be assigned: IPV4, utilizing 4 sets of numbers that appear in the format 149.101.146.50.   Recently, IPV4 addresses have become practically exhausted and it has become necessary to implement a scheme that would allow for more assignments.   ISPs have begun to utilize a technique called carrier-grade network address translation (CGNAT),

whereby multiple internet users can share a single, public IP address through a router subdivision technique.   Major remote computing services and electronic communication service providers utilize CGNAT on their networks.   A newer type of IP address known as IPV6, which utilizes eight sets of 4-digit numbers that appear in the format 2607:f330:8400:0100:0000:0000:0000:0050 are beginning to be used.   Newer technologies, such as the LTE mobile data protocol, support IPV6 assignments.

j.      IP addresses, both IPV4 and IPV6, may be static (unchanging) or dynamic (changing).   Dynamic IP addresses, however, must be accompanied by the date and time range during which it was captured in order for the ISP to resolve/attribute it to a specific customer/subscriber/device.   In the case of an IPV4 CGNAT'd address, wireless ISPs generally cannot attribute the assignment to a customer/device/subscriber without additionally being provided the associated source port at capture, as many users may be sharing the exact same IPv4 address at a single moment in time.   A dynamic IPV6 address captured during a query (e.g. an account login) can, however, be attributed to a single, unique device/customer/subscriber because only one device is assigned a given IPV6 address at a time (depending on the wireless carrier, and providing the source port or other information is not necessary to resolving the IPV6 address).   In my training and experience, of the major wireless carriers, the following are able to translate a dynamic IPV6 address with associated timestamp to a single, unique device: Sprint, T-Mobile, and Verizon.

k.      Law enforcement agents are complying with the statutory identification requirements of 18 U.S.C. § 3123(b)(1)(C) by identifying the electronic device not by its telephone number or IMSI, but by its unique IPV6 address assigned during the specified dates/times. Through the requested Order, the IPV6 number specified herein will allow the Service Provider to identify the device used for the connection so that the requested information can be provided by the Service Provider.

## INVESTIGATION AND PROBABLE CAUSE

7.      The United States, including the United States Marshals Service, is conducting a criminal investigation of Deandra ADAMS regarding the commission of the above-described offenses.

8.      On or about January 10, 2022, in the Eastern District of Missouri, an arrest warrant was issued for Deandra ADAMS, Cause No. 4:09 CR 128 ERW, for a Supervised Release Violation based on a Petition for Warrant from the United States Probation Office located in the Eastern District of Missouri. ADAMS' original charge was Failure to Register as a Sex Offender. Since ADAMS' release from the Bureau of Prisons on or about November 23, 2021, he has failed to register as a sex offender as required by law and as a condition of his supervised release.

9.      The USMS began a fugitive investigation for ADAMS and conducted law enforcement, commercial and open-source database inquiries for information concerning ADAMS' whereabouts.   The investigation revealed ADAMS to have a Facebook account with a screen name of MrDee MrDre (Dre Dog) https://www.facebook.com/lildeevsdre (the TARGET PAGE). The Facebook ID is 100002821818948. ADAMS has made regular social media posts on this account, with the most recent being February 11, 2022. Additionally, known associates of ADAMS were identified on this account.

10.     On January 12, 2022, DUSM Snyder applied for and received a court order from Honorable Judge Stephen R. Welby, U.S. Magistrate Judge for the Eastern District of Missouri, authorizing the installation, use and monitoring of a pen register and trap and trace device ("pen/trap") on, and the disclosure of historic records for, the TARGET PAGE. DUSM Snyder began receiving information from Facebook concerning the Internet Protocol ("IP") address(es) used to access the TARGET PAGE.

11.     On February 9, 2022, the following IPv6 address was used to access the TARGET PAGE: **IP Address: 2600:100a:b11a:f706:d1a6:fcd4:9e59:de40 Time: 2022-02-09 05:15:01**

**UTC**, this IPv6 address belongs to and is assigned by Verizon, and only Verizon can resolve (identify) that address to a unique device, account and subscriber to which that IPv6 was assigned. To be clear, Verizon assigns one and only one device a given IPv6 address at a time. In this regard, we can conclusively isolate and identify that device to the exclusion of all other through the unique IPv6 address and date/time range.

12.     The USMS conducted fugitive investigations to locate ADAMS in two of his prior supervised release violation warrants in 2019 and 2020.   On July 2, 2019, the USMS had to deploy a police K-9 to apprehend him.   On November 24, 2020, USMS had a short foot chase to apprehend him.   Based on the ADAMS' prior and current actions, there is probable cause to believe that defendant is aware that a warrant has been issued and that he has fled.   There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting ADAMS, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

**<u>CONCLUSION</u>**

13.     Based on the above information, there is probable cause to believe that the subject cellular telephone is currently being used by Deandra ADAMS for whom an arrest warrant was issued by the U.S. District Court for the Eastern District of Missouri on or about January 10, 2022, in Cause No. 4:09 CR 128 ERW for a supervised release violation based on a Petition for a Warrant from the United States Probation Office for Deandra ADAMS who is on supervision for Failure to Register as a Sex Offender in violation of Title 18, United States Code, Section 2250, and whose whereabouts are currently unknown. There is likewise probable cause to conclude that locating and monitoring the movements of the subject cellular telephone will lead to the location and arrest of Deandra ADAMS.

14.     None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass.

Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.   Furthermore, the criminal conduct being investigated is not limited to the daytime.   Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.   Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

15.    The monitoring of the location of the subject cellular telephone by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

I state under the penalty of perjury that the foregoing is true and correct

2/18/2022
DATE

*Kelsey J Snyder*
KELSEY SNYDER
Deputy U.S. Marshal
United States Marshals Service

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41, this __18th__ day of February, 2022.

*Patricia L. Cohen*
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

9

**ATTACHMENT A**

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

**I.      The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| Verizon | The cellular telephone associated with IP Address: 2600:100a:b11a:f706:d1a6:fcd4:9e59:de40 Time: 2022-02-09 05:15:01 UTC (the subject cellular telephone) | Not known | Deandra ADAMS |

**II.     The Provider**

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of Verizon, and other applicable service providers reflected on the list contained in this Attachment A, including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm |     Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
|    d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications |     Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications |     Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications  1 |
| | Metro Teleconnect | | |

---

1  Last Update: 09/27/2019

**ATTACHMENT B**

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

I.      **PRECISION LOCATION INFORMATION**

      A.      **Information to be Disclosed by the Provider**

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from February 8, 2022 to April 4, 2022, at 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

B.      **Information to Be Seized by the United States**

All information described above in Part I, Section A that will assist in arresting Deandra ADAMS, who has violated Title 18, United States Code, Section 2250, in connection with an arrest warrant issued by the U.S. District Court for the Eastern District of Missouri on or about January 10, 2022 for a Supervised Release Violation, and is a "person to be arrested" within the meaning

1

of Federal Rule of Criminal Procedure 41(c)(4).

## II.     CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.     All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.     Length of service;

3.     All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")   numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

4.     Subscriber information available for any originating telephone number;

5.     Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6.     Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.     Cellular telephone records and information pertaining to the following, for the above-specified time period:

     (a)    call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

     (b)    cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

     (c)    numbers dialed;

     (d)    call duration;

     (e)    incoming numbers if identified;

     (f)    signaling information pertaining to that number;

     (g)    a listing of all control channels and their corresponding cell sites;

     (h)    an engineering map showing all cell site tower locations, sectors and orientations;

     (i)    subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

     (j)    historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD); and,

     (k)    Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

## III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.    Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a.   IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b.   Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c.   IP addresses of any websites or other servers to which the subject cellular telephone connected;

d.   Source and destination telephone numbers and email addresses;

4

e.  "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.     The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.     The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.     The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.     Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone

listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.